1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10

11   BAERBEL WIGGS, o/b/o, DAVID WIGGS, )      NO. EDCV 03-1028-MAN
                                        )
12                         Plaintiff,   )
                                        )      MEMORANDUM OPINION AND ORDER
13              v.                      )
                                        )
14   JO ANNE B. BARNHART,               )
     Commissioner of the               )
15   Social Security Administration,    )
                                        )
16                         Defendant.   )
     _____)
17

18        Plaintiff filed a Complaint on September 12, 2003, seeking review

19   of the denial by the Social Security Commissioner ("Commissioner") of

20   disability insurance benefits ("DIB") and supplemental security income

21   ("SSI").  42 U.S.C. §§ 405(g), 1388(c)(3).  On December 23, 2003, the

22   parties filed a "Consent to Proceed Before a United States Magistrate

23   Judge," pursuant to 28 U.S.C. § 636(c).  The parties filed a Joint

24   Stipulation on July 19, 2004, in which:  Plaintiff seeks an order

25   reversing the Commissioner's decision and remanding for the payment of

26   benefits or, alternatively, for a new hearing; and Defendant requests

27   that the Commissioner's decision be affirmed.  The Court has taken the

28   parties' Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for SSI on May 1, 1995, and an application for DIB on June 12, 1995. (Administrative Record ("A.R.") 14, 119-21.) Plaintiff claimed to have been disabled since March 31, 1998, his amended onset date, due to back problems, problems with his right arm and hand, and depression.[1] (A.R. 65, 77, 119, 124-25.) He had past relevant work experience as a car salesman, truck driver, and supply sergeant. (A.R. 15.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On June 6, 1997, Plaintiff, who was not represented by counsel, appeared and testified at a hearing before Administrative Law Judge Ann Blair ("ALJ Blair"). (A.R. 23-52.) On November 18, 1998, ALJ Blair denied Plaintiff's request for benefits. (A.R. 212-20.) On June 12, 2001, the Appeals Council remanded the case to an Administrative Law Judge for further review. (A.R. 231-34.) On May 7, 2002, Plaintiff's wife, who was represented by counsel, appeared at a hearing before Administrative Law Judge Donald Rector ("ALJ Rector"), who continued the hearing in order to obtain further records, including the death certificate of Plaintiff, who had died before that hearing. (A.R. 53-59.) On September 26, 2002, Plaintiff's wife, again represented by counsel, appeared and testified at a hearing before Administrative Law Judge Mason Harrell ("ALJ"). (A.R. 60-86.) On October 2, 2002, the ALJ denied Plaintiff's request for benefits, and

---

[1] In his application papers, Plaintiff alleged an onset date of July 15, 1992, which Plaintiff's counsel amended at the September 26, 2002 hearing. (A.R. 65.)

the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 14-20, 4-5.)

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

A.   <u>**Plaintiff's Medical Evidence**</u>

In support of his claimed impairments, Plaintiff submitted records from his treating doctors, and several examining physicians. With respect to his lumbar impairments, Plaintiff submitted records from Charles Dillon, a chiropractor, who treated Plaintiff in 1987 for injuries Plaintiff sustained in an industrial accident. (A.R. 138-49.) As of December 26, 1998, the date Dr. Dillon last treated Plaintiff, Dr. Dillon noted that Plaintiff's thoracolumbar movements were "painful and restricted," and Plaintiff should be precluded from heavy lifting or repeated bending and stooping activities, although he "may be able to continue in his regular work duties with the above restrictions." (A.R. 138-40.)

In a report dated July 30, 1987, Dr. Thomas Devlin, who examined Plaintiff at the request of the Zurich-American Insurance Group, found that Plaintiff had sustained a "significant" lumbar disc injury, although he suggested that Plaintiff receive an MRI of his lumbar spine in order to evaluate the extent of his injury. (A.R. 150-53.) On November 17, 1987, Dr. David Ziegler, a neurologist who examined Plaintiff, diagnosed Plaintiff with "severe lumbosacral sprain" and "[n]o current evidence of cervical or lumbar radiculopathy," and agreed with Dr. Devlin that an MRI should be obtained of Plaintiff's back.

3

(A.R. 154-59.)   On February 17, 1988, Dr. John Phillips, who also examined Plaintiff at the request of the Zurich-American Insurance Group, found that Plaintiff "does show some mechanical derangement," "some probable nerve root compressive signs," and "some neurological dysfunction," and, like Dr. Devlin, suggested that an MRI should be performed, as well as bilateral lower extremity EMGs.   (A.R. 164-67.)

With respect to Plaintiff's right arm injury, Plaintiff submitted records from the Victor Valley Community Hospital, which indicated that Plaintiff was admitted to that hospital on May 28, 1995, after suffering a gunshot wound just above the right elbow, and was discharged on May 30, 1995.   (A.R. 189-90.)   An August 28, 1995 electromyogram was performed by Dr. Manmohan Nyyar, who found an "[a]bnormal EMG study which is consistent with right radial and ulnar nerve palsy below [the] elbow" and noted that "clinical correlation is needed." (A.R. 174.)   In an October 9, 1995 Medical Report, Dr. Joseph Billock found that Plaintiff's "[right] upper extremity neuropathy" prevented Plaintiff from "working full-time at his regular job." (A.R. 175.)   In November 1, 1995 notes, Dr. Billock noted that Plaintiff's gunshot wound "severed the right ulnar and radial nerve just above the elbow," and he diagnosed Plaintiff with "radial and ulnar nerve palsy of the right arm." (A.R. 177.)

On August 15, 1998, Dr. Thomas Dorsey, an orthopedic physician who examined Plaintiff at the request of the Commissioner, diagnosed Plaintiff with "[d]egenerative disc disease, L5/S1, with no evidence of significant radiculopathy at this time," and "[s]tatus post gunshot wound to the right elbow area, now with evidence of near-complete radial

4

nerve dysfunction."   (A.R. 204-07.)   Dr. Dorsey further opined that Plaintiff "will not be able to do any repetitive manipulative activities with regard to the right hand," noting that Plaintiff was unable to show any grip strength with his right hand.  (*Id.*)

There is a September 6, 1995 Residual Physical Functional Capacity Assessment, completed by a state agency physician whose identity is unclear, which limits Plaintiff to "light" work, with further non-exertional limitations.[2]   (A.R. 111-18.)   In addition, there is a December 26, 1995 Physical Residual Functional Capacity Assessment, completed by a state agency physician whose identity is unclear, which limits Plaintiff to "light" work, with additional non-exertional limitations.  (A.R. 96-103.)

On August 10, 2001, Dr. Kenneth Boddie, a physical medicine and rehabilitation physician who examined Plaintiff at the request of the Commissioner, diagnosed Plaintiff with the following impairments: history of gunshot wound to the right elbow with palsy of the radial and ulnar nerves; right de Quervain's syndrome;[3] left bicipital and supraspinatus tendintis, mild; degenerative disc disease of the lumbar spine without radiculopathy; scoliosis; leg-length discrepancy, left 1.5 centimeters greater than right; greater trochanteric bursitis/tendinitis, right greater than the left; chondromalacia of the

---

[2]      "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

[3]      Quervain's disease is "stenosing tenosynovitis of the wrist." MEDDESK, § 11:2.

right patella; possible degenerative joint disease of the right knee; strain of the longitudinal arches bilateral; metatarsalgia, bilateral; clawing of the toes of the left foot; probable venous stasis of the lower extremities; and obesity. (A.R. 240-41.) Dr. Boddie further found that Plaintiff "should be able to lift/carry 50 pounds occasionally and 25 pounds frequently" and is "able to stand/walk six hours cumulatively in an eight-hour day" and "[can] bend and crouch frequently," but noted that electro-diagnostic testing of Plaintiff's right wrist and hand was necessary in order to assess the degree of limitation in the right wrist and hand. (A.R. 242.)

In a corresponding August 10, 2001 Medical Source Statement, Dr. Boddie noted that Plaintiff could lift 50 pounds occasionally and 20 pounds frequently primarily with the left arm. In addition, Dr. Boddie found that Plaintiff had non-exertional limitations, including: Plaintiff had limitations with pushing and pulling with his upper extremities and problems with grasping and using the right hand and wrist; Plaintiff was frequently limited in balancing, kneeling, crouching, crawling, and stooping; Plaintiff had "problems with weakness of the right wrist and hand [that] preclude rope climbing and would impair ladder and scaffold climbing"; and Plaintiff was precluded from "frequently" handling, fingering, and feeling. (A.R. 243-46.)

Plaintiff submitted treating records from 2002, showing that Plaintiff was admitted to the Arrowhead Regional Medical Center on April 16, 2002, and died on April 18, 2002. Plaintiff was diagnosed with diabetes upon being admitted. (A.R. 295-96.) An April 16, 2002 ECG showed "possible inferior [infarction]," and an April 17, 2002 ECG

showed "possible lateral [infarction]." (A.R. 297, 301.)  An April 17, 2002 chest x-ray showed "decreased lung volumes with increased pulmonary opacities throughout both lungs" and "worsening [congestive heart failure] and pulmonary edema." (A.R. 299.)  An April 18, 2002 chest x-ray showed "decreased lung volumes with cardiomegaly and diffuse pulmonary edema from congestive heart failure." (A.R. 298.) Plaintiff's death certificate shows that the "immediate cause" of Plaintiff's death was "cardio pulmonary arrest" due to "shock" and "diabetic ketosis." (A.R. 305.)

**B.   The ALJ's Decision**

At the first hearing, ALJ Blair questioned Plaintiff and Plaintiff's wife as to his disability. (A.R. 23-52.)  After the hearing, ALJ Blair found that Plaintiff suffered from a combination of "severe" physical impairments, although not a "severe" mental impairment, and that Plaintiff had the residual functional capacity to perform work at the "light" level, with the exception of use of his right hand for repetitive manipulative activities. (A.R. 214-15, 219.) ALJ Blair further found that Plaintiff could perform his past relevant work as a salesman and, therefore, was not disabled. (A.R. 219-20.)

On June 12, 2001, the Appeals Council vacated that decision and remanded the case for further proceedings. (A.R. 232-34.)  In particular, the Appeals Council directed the Administrative Law Judge to:

Obtain additional evidence concerning [Plaintiff's]

7

musculoskeletal [impairments] in order to complete the administrative record in accordance with regulatory standards concerning consultative examinations and existing medical evidence (20 C.F.R. §§ 404.1512-1513 and 416.912-13).  The additional evidence may include, if warranted and available, a consultative orthopedic examination and medical source statements about what [Plaintiff] can still do despite the impairments.

Give consideration to the treating source opinion, pursuant to the provisions of 20 C.F.R. §§ 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p and explain the weight given to such opinion evidence.  As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinion and medical source statements about what [Plaintiff] can still do despite the impairments (20 C.F.R. §§ 404.1512 and 416.912).

Further evaluate [Plaintiff's] subjective complaints and provide rationale in accordance with the disability regulations pertaining to the evaluation of symptoms (20 C.F.R. §§ 404.1529 and 416.929) and Social Security Ruling 96-7p.

Give further consideration to [Plaintiff's] maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the

8

assessed limitations (20 C.F.R. §§ 404.1545 and 416.945 and
Social Security Ruling 96-8p).

Further, if necessary, obtain evidence from a medical expert
to clarify the nature and severity of [Plaintiff's]
impairments (20 C.F.R. §§ 404.1527(f) and 416.927(f)) and
Social Security Ruling 96-6p).

If warranted by the expanded record, obtain evidence from a
vocational expert to clarify the effect of the assessed
limitations on [Plaintiff's] occupational base (Social
Security Ruling 83-14). The hypothetical questions should
reflect the specific capacity/limitations established by the
record as a whole. The Administrative Law Judge will ask the
vocational expert to identify examples of appropriate jobs and
to state the incidence of such jobs in the national economy
(20 C.F.R. §§ 404.1566 and 416.966).

(A.R. 233.)

In response to the Appeals Council's order, the ALJ conducted a
hearing on September 26, 2002, at which Plaintiff's wife testified, and
the ALJ elicited testimony from Dr. Armon Toomajiam, a medical expert.
(A.R. 60-86.) The ALJ also elicited the opinion of Ms. Sandra Fioretti,
a vocational expert. (*Id.*)

In his October 2, 2002 written decision, the ALJ found that
Plaintiff had not engaged in substantial gainful activity since his

alleged onset date of March 31, 1998. (A.R. 19.) The ALJ further found that Plaintiff had "severe" physical impairments, but that Plaintiff did not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4. (*Id.*) The ALJ found that Plaintiff did not have a "severe" mental impairment. (*Id.*) The ALJ further found that Plaintiff's testimony regarding his impairments was not credible.[4] (*Id.*)

In addition, the ALJ found that Plaintiff had the following residual functional capacity during the claimed period of disability:

> [Plaintiff was able to] perform medium work activity. Push or pull activity was limited in his right arm to nothing above shoulder level and no fine manipulation, grasping or gripping more than occasionally. Signing with his right hand was limited to occasional use.[5]

(*Id.*) The ALJ found that Plaintiff's residual functional capacity did not preclude the performance of his past relevant work as an automobile salesperson. (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*)

---

[4] The ALJ found that Plaintiff "died of causes not related to his disability" on April 18, 2002. (A.R. 19.)

[5] "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

10

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence.  Id. at 1041; see also Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Here, Plaintiff alleges two general issues. <u>First</u>, Plaintiff contends that the ALJ erred by failing to comply with the Appeals Council's June 12, 2001 order. <u>Second</u>, Plaintiff contends that the ALJ erred in finding that Plaintiff's impairments did not meet or equal a listed impairment. (Joint Stip. at 3.)

Plaintiff makes five specific arguments as to how the ALJ failed to comply with the June 12, 2001 Appeals Council order. <u>First</u>, Plaintiff contends that the ALJ failed to properly consider the opinions of Dr. Dorsey and Dr. Billock. <u>Second</u>, Plaintiff contends that the ALJ failed to obtain additional evidence of his musculoskeletal impairment. <u>Third</u>, Plaintiff contends that the ALJ failed to give proper consideration to the treating source opinions and records. <u>Fourth</u>, Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's subjective complaints as testified to by Plaintiff and Plaintiff's wife. <u>Fifth</u>, Plaintiff contends that the ALJ failed to properly assess his residual functional capacity.

**A.**   <u>**The ALJ's Finding Regarding Plaintiff's Residual Functional Finding Is Not Based On Substantial Evidence, And The Record Needs To Be Further Developed**</u>**.**

Ordinarily, the opinions of a treating physician should be given great, if not controlling, weight. *See* Social Security Ruling 96-2p. When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific

12

and legitimate reasons for doing so, supported by substantial evidence in the record.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating physicians' opinions and relying upon Social Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled).  Broad and vague reasons will not suffice for rejecting the treating physician's opinion.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  Furthermore, "[t]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician."  Lester, 81 F.3d at 830 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).

In discussing the medical records from December 2001 and 2002, the ALJ noted Dr. Boddie's August 10, 2001 examination report, in which Dr. Boddie concluded that Plaintiff "could perform medium work activity with limitations precluding rope climbing and occasional ladder and scaffold climbing" and that Plaintiff "was able to frequently handle, finger, and feel with his right hand."  (A.R. 16.)  In addition, the ALJ discussed the notes of Plaintiff's treating doctors from December 2001 and March and April 2002, stating:

> [Plaintiff] was seen in December 2001 for medication refill and complaints of a lump on his upper chest and the back of his head.  Blood pressure was elevated.  His weight was 249 pounds.  Handwritten notes are illegible.  He was told to diet and exercise and return in three months.  (Exh. 40, p.2).  In March 2002, [Plaintiff] presented with complaints of right-sided pain.  Weight had increased to 264 pounds.  He was again

13

advised to diet and exercise (Exh. 40, p.1). Laboratory data
noted elevated glucose level at 202 (Exh. 40, p.7). On April
16, 2002, [Plaintiff] sought emergency room treatment for
complaints of nausea, vomiting, generalized weakness and
inability to stand, and severe chest pain. Admission
diagnosis was diabetic ketoacidosis with a glucose count
greater than 1000. He subsequently developed multi-organ
failure secondary to septic shock (Exh. 41). [Plaintiff] died
on April 18, 2002.

(A.R. 16.)

The ALJ relied on the testimony of Dr. Toomajian, the medical
expert, whose testimony the ALJ summarized as follows:

Dr. Toomajian, a medical expert, testified that [Plaintiff]
had impairments consisting of status post gunshot wound to his
right elbow with radial nerve dysfunction, degenerative disc
disease at L5-S1 without radiculopathy and diabetes as of
March 20, 2002, as per Exhibit 40, p. 5. Dr. Toomajian stated
that none of [Plaintiff's] impairments met or equaled any
listing of impairments. He stated that the diabetes likely
came on gradually and was apparently not too severe because
acidosis and blood sugar readings were not at severe levels as
of March 2002. He further stated that the leg length
discrepancy of 1.5 cm. was not significant. The medical
expert concluded that prior to March 2002, [Plaintiff] was
capable of medium work activity. He was precluded from

14

1    pushing or pulling with his right arm above shoulder level.
2    He was further precluded from fine manipulation, grasping or
3    gripping more than occasionally.   He was also limited to
4    occasional signing with his hand.   The undersigned finds the
5    medical expert testimony and adopts the residual functional
6    capacity as testified to by Dr. Toomajian.

8    (A.R. 17.)

10   Plaintiff contends that the Appeals Council order mandated that the
11   ALJ specifically address the opinion evidence provided by Dr. Dorsey and
12   Dr. Billock.   Plaintiff argues that the ALJ "only selectively cited
13   Exhibits 40 and 41, claiming that the handwritten notes were illegible,"
14   and that he improperly failed to cite any earlier treating or
15   consultative medical records or explain the lack of weight given to the
16   treatment source opinions."   Plaintiff further contends that the ALJ
17   erred by adopting the "one-time examining consultant's opinion" and the
18   medical expert's opinion.   (Joint Stip. at 4-5.)   Plaintiff contends
19   that the medical expert did not properly assess his limitations, because
20   he was provided only exhibits 29, 40, and 41 and thus, on an incomplete
21   record, improperly found that Plaintiff could perform "medium" work.
22   (Joint Stip. at 6-7.)

24   Plaintiff is correct that the ALJ failed to discuss the earlier
25   records of his treating physicians, Dr. Dorsey and Dr. Billock.   The
26   Appeals Council's order specifically noted that:   "[i]n a consultative
27   examination dated August 1, 1995, Dr. Thomas R. Dorsey opined that
28   [Plaintiff] is not able to do any repetitive manipulative activities

15

with his right hand (Exhibit 21, page 4).  On October 9, 1995, Dr. Joseph Billock opined that [Plaintiff] is prevented from working full-time at his regular job (Exhibit 13).  The Administrative Law Judge did not consider this opinion evidence."[6]  (A.R. 232.)

The record shows that, in an August 15, 1998 report, Dr. Dorsey diagnosed Plaintiff with "[d]egenerative disc disease, L5/S1, with no evidence of significant radiculopathy at this time," and "[s]tatus post gunshot wound to the right elbow area, now with evidence of near-complete radial nerve dysfunction," and further opined that Plaintiff "will not be able to do any repetitive manipulative activities with regard to the right hand."  (A.R. 204-07; emphasis added.)  The ALJ's failure to discuss Dr. Dorsey's August 15, 1995 opinion that Plaintiff was limited from repetitive manipulative activities with his right hand therefore constitutes error.  Lester, 81 F.3d at 830.

In an October 9, 1995 Medical Report, Dr. Billock found that Plaintiff's disability, which he diagnosed as "[right] upper extremity neuropathy," prevented Plaintiff from "working full-time at his regular

---

[6]    In opposition to Plaintiff's argument that the ALJ failed to consider the opinions of Dr. Dorsey and Dr. Billock according to the Appeals Council's order, Defendant argues that the Court "should adopt the Appeals Council's interpretation of its own order and find that the ALJ's clarification of his finding that Plaintiff could perform his past relevant work was proper," citing Moore v. Apfel, 216 F.3d 864, 867 (9th Cir. 2000).  (Joint Stip. at 13.)  In Moore, however, the district court initially remanded the case, asking that the ALJ clarify his residual functional capacity assessment, and affirmed the ALJ's subsequent decision on appeal when the ALJ complied with such order.  Here, the Court reviews the ALJ's decision to determine whether the ALJ's 2002 decision is based upon substantial evidence, including whether the ALJ has appropriately complied the governing legal standards, regardless of whether the Appeals Council has affirmed the ALJ's 2002 decision.  See Smolen, supra, 80 F.3d at 1279.

16

1   <u>job</u>."   (A.R. 175; emphasis added.)   While an opinion of a treating

2   physician on the issue of disability is not necessarily conclusive, the

3   ALJ must provide specific and legitimate reasons for discounting such an

4   opinion.  *See* <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761-72 (9th Cir. 1989).

6       Furthermore, a review of Dr. Toomajian's testimony shows that such

7   testimony is not based upon substantial evidence, as it appears that Dr.

8   Toomajian either failed to take into consideration Plaintiff's prior

9   medical records, or he improperly disregarded them.   In particular, with

10   respect to Plaintiff's residual functional capacity, Dr. Toomajian did

11   not address the prior residual functional capacity assessments (A.R. 96-

12   103, 111-19) that limited Plaintiff to "light" work.[7]

14       The ALJ's reliance on Dr. Boddie's finding that Plaintiff could

15   perform "medium work" similarly constitutes error.   A review of Dr.

16   Boddie's report, which was evidently obtained to comply with the Appeals

17   Council's order, indicates that Dr. Boddie did not review the entire

18   record regarding Plaintiff's impairments.   (*See* A.R. 240 -- list of

19   medical records reviewed by Dr. Boddie.)   Thus, Dr. Boddie's examination

20   is not substantial evidence of the extent of Plaintiff's limitations.

21   In fact, the ALJ's finding that Plaintiff could perform "medium" work

22   conflicts with ALJ Blair's prior finding in 1998 that Plaintiff could

---

[7]   When questioned by the ALJ about Dr. Boddie's finding that Plaintiff could perform "medium" work, Dr. Toomajian replied:   "[I] thought that with the problem he had in his elbow and radial nerve palsy, he couldn't do that.   But . . . this doctor who is a physical medicine and rehabilitation specialist felt that he could."   (A.R. 71.) Dr. Toomajian later testified that, "as far as the residual functional capacity, I would have to defer to Dr. [Boddie] since he personally examined him."   (A.R. 72.)   Dr. Toomajian further noted that:   "[if other doctors found that Plaintiff was more limited with respect to lifting], I didn't note it in the record."   (A.R. 72.)

perform only "light" work, which the Appeals Council did not question or disturb in its order.

Here, the records as contained in Exhibits 20, 40, and 41 from Plaintiff's treating physicians from December 2001 and from 2002, prior to Plaintiff's April 18, 2002 death, show that Plaintiff had diabetes, at a minimum. (A.R. 283-304.) Obviously, Plaintiff's physical impairments may have been made worse by his diabetes, a condition he did not know that he had until after he was admitted on April 16, 2002, two days prior to his death. (A.R. 64 -- testimony of Plaintiff's wife at the September 26, 2002 hearing.) Even Dr. Toomajian, the medical expert, testified that Plaintiff's diabetes was present as of March 15, 1998. (A.R. 67.) Thus, Plaintiff's diabetes could bear upon his residual functional capacity, and should be considered in combination with his other impairments in determining whether Plaintiff was disabled for the claimed period of disability. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001).

The ALJ should further develop the record by re-contacting Plaintiff's treating physicians to clarify any ambiguities in their opinions and findings. This is especially true with respect to the records from Dr. Billock and Dr. Dorsey, as Plaintiff was unrepresented at the 1998 administrative hearing and the duty to develop the record for that period is therefore heightened. In Higbee v. Sullivan, 975 F.2d 558, 561-62 (9th Cir. 1992)("[W]here the claimant is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as

18

well as unfavorable facts and circumstances are elicited.") Clearly,
such records could shed further light on Plaintiff's right extremity and
back impairments. Even though such records would bear upon a period
prior to Plaintiff's claimed period of disability, as Plaintiff amended
his onset date to be March 31, 1998, they could be highly instructive as
to what Plaintiff's residual functional capacity was after March 31,
1998, especially if Plaintiff's right extremity and lumbar issues were
progressive in nature. *See* Magallanes v. Bowen, 881 F.2d 747, 752 (9th
Cir. 1989)(reports from 1983 and 1984 used to assess onset of claimant's
disabling back impairment in 1985).

In addition, although the ALJ's point that the handwritten notes of
Plaintiff's treating doctors from December 2001 and March and April 2002
were "illegible" seems well-founded, it is necessary to request that
Plaintiff's treating physicians at the Arrowhead Regional Medical Center
clarify their opinions. Brown v. Heckler, 713 F.2d 441, 442-43 (9th
Cir. 1993)(the Commissioner has an affirmative duty to develop the
record, even if the claimant is represented by counsel); 20 C.F.R. §
416.912(e)(duty to re-contact treating physician). *See also* Thomas v.
Barnhart, 278 F.3d 947, 956-57, 959 (9th Cir. 2002)(the requirement in
20 C.F.R. § 416.912(e) that the Commissioner re-contact treating sources
is triggered only where the information from the treating sources is
inadequate to make a determination regarding disability). The ALJ also
should inquire from such treating physicians as to when Plaintiff began
to suffer from diabetes, and its effect on Plaintiff's residual
functional capacity. While such diagnoses from Plaintiff's treating
doctors would be retrospective in nature, it is necessary here, as
Plaintiff is deceased. *See* Flaten, 44 F.3d at 1461 (claimant may

19

establish a continuous disabling impairment with a retrospective diagnosis); *see also* <u>Estok v. Apfel</u>, 152 F.3d 636, 638-39, 641 (7th Cir. 1998)(retrospective diagnosis of fibromyalgia may be considered if it is corroborated by evidence contemporaneous with the claimed period of disability, but not where the physician offers no opinion regarding the level of severity and disability that it created in the past).

Finally, after the record is adequately clarified and developed, the ALJ should seek an opinion from a medical expert regarding the combined effects of Plaintiff's impairments on Plaintiff's residual functional capacity. *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity, or insufficiency in the evidence). The ALJ should ensure that the *entire* record is provided to that expert. In addition, the medical expert should then determine if Plaintiff's impairments meet or equal a listed impairment. Even if any one of these impairments does not meet the criteria specified in the listings, the ALJ must find that Plaintiff was disabled during the claimed period if the combination of Plaintiff's impairments was medically equal to any listed impairment.[8] *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); <u>Lewis</u>, 236 F.3d at 514.

///

///

///

///

---

[8]   Because the record must be further developed and clarified on remand, the Court does not reach Plaintiff's additional issues regarding Plaintiff's residual functional capacity finding and whether Plaintiff's impairments met or equaled a listed impairment.

B.    **The ALJ Improperly Rejected The Testimony Provided By Plaintiff And Plaintiff's Wife.**

The law is well-settled that, once a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to cause some level of pain of the type which the claimant alleges, the claimant's subjective complaints regarding the severity of his or her pain may not be discredited based solely on a lack of objective medical evidence to corroborate the allegations. Tonapetyan, 242 F.3d at 1147-48; Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1985).  As the Ninth Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony.  But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (stating that "it is the very nature of excess pain to be out of proportion to the medical evidence"), a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.

Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997). This rule is based on the recognition that pain is an inherently subjective phenomenon, which cannot be objectively verified or measured and varies significantly among individuals.  Bunnell, 947 F.2d at 347.

21

Unless the evidence suggests affirmatively that a claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's excess pain or symptom testimony, such as conflicts between the claimant's testimony and conduct, or internal contradictions in the claimant's testimony. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993); <u>Light</u>, 119 F.3d at 792. In determining whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." <u>Smolen</u>, 80 F.3d at 1284.

The Court will give great weight to the ALJ's credibility assessment. <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically). However, when an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." <u>Cequerra v. Secretary</u>, 933 F.2d 735, 738 (9th Cir. 1991); <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.") When discrediting a claimant's testimony, it is not enough for the ALJ to make only general findings; he must state

which pain or symptom testimony is not credible and what evidence suggests that the complaints are not credible. *See* <u>Swenson v. Sullivan</u>, 876 F.2d 683, 688 (9th Cir. 1979).

"Lay testimony as to a claimant's *symptoms* is competent evidence that an ALJ *must* take into account, unless he or she expressly determines to disregard such testimony and *gives reasons germane to each witness for doing so.*" <u>Lewis</u>, 236 F.3d at 511 (emphasis added). *See also* <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996); <u>Dodrill</u>, 12 F.3d at 919. An ALJ may "properly discount lay testimony that conflict[s] with the available medical evidence" (<u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984)), particularly, where, as in <u>Vincent</u>, "lay witnesses [are] making medical *diagnoses*," as "[s]uch medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence." <u>Nguyen</u>, 100 F.3d at 1467 (original emphasis). When, however, a lay witness testifies about a claimant's *symptoms*, which may affect the claimant's ability to work, such testimony *is* competent evidence and therefore *cannot* be disregarded without comment. *Id.*

In <u>Dodrill</u>, the Ninth Circuit explained the importance of lay testimony and why it must be considered in determining a claimant's disability:

> Although eyewitnesses have to rely to some extent on communications with the claimant in ascertaining whether she is disabled or malingering, we have held that friends and family members in a position to observe a claimant's symptoms

and daily activities are competent to testify as to her condition. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." 20 C.F.R. § 404.1513(e)(2).

> That the ALJ dismissed all the lay witness testimony solely because he found that the claimant was not credible suggests he may have been under the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms. . . . [That] is not the case. An eyewitness can often tell whether someone is suffering or merely malingering. While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight.

12 F.3d at 919.

In discussing the testimony of Plaintiff and Plaintiff's wife, the ALJ stated:

> [Plaintiff's] wife testified that her husband did not know he had diabetes before he died. He was given treatment the day he was diagnosed, April 15, 2002 and he died on April 18, 2002. She said her husband was right handed. He was unable to do the paper work for auto sales jobs. She said he had

24

problems with fatigue and lay on the couch with fatigue for a
year and major depression from an on-the-job injury sustained
in 1986.  He had a gunshot wound in 1994.  She stated he tried
to go back to car sales but only lasted four weeks because he
had trouble filling out paper work.  She said he went back to
car sales about a year or so after his gunshot wound.  She
stated that he slept a lot during the day and had
concentration problems.  She asserted that he took pain
medications for his back.  When asked about Exhibit 38, she
said that her husband signed the document with his right hand.

.     .     .     .

In this case, the undersigned finds the [Plaintiff's]
statements regarding his pain and other symptoms concerning
his established impairments are not persuasive or credible at
least to the degree that he alleges an inability to perform
all activities.  The evidence of record fails to support his
allegations of unrelenting and debilitating pain.  The
testimony of [Plaintiff's] wife provided no further
information that would have had an effect upon his ability to
engage in work-related activities.  Based upon the entire
evidentiary record, there is no justification to impose
limitations more than those found herein.

(A.R. 16-18.)

25

Here, there is objective evidence of Plaintiff's impairments. (A.R. 174 -- August 28, 1995 electromyogram finding "right radial and ulnar nerve palsey below [the] elbow" and noting that "clinical correlation is needed."; A.R. 163 -- February 17, 1988 x-ray of the pelvis and hips showing "minimal osteoarthritic changes . . . about the right sacroiliac joint with mild sclerosis"; A.R. 168 -- February 29, 1988 EMG showing a "very slight change in a L-4,5 distribution on the right suggestive of nerve root dysfunction in this distribution which may be relatively long standing.")  Thus, the ALJ was required to give clear and convincing reasons for rejecting Plaintiff's testimony.

The ALJ's reason for rejecting Plaintiff's testimony -- *i.e.*, because the "evidence of record fails to support his allegations of unrelenting and debilitating pain" -- is improper.  It is error to require a claimant to adduce objective medical evidence to support the severity of her asserted pain or symptoms. *See* <u>Tonapetyan</u>, 242 F.3d at 1147-48; <u>Bunnell</u>, 947 F.2d at 345; <u>Fair</u>, 885 F.2d at 601.

Furthermore, the ALJ's reason for rejecting the testimony of Plaintiff's wife -- because she "provided no further information that would have had an effect upon his ability to engage in work-related activities" -- is belied by the record.  Plaintiff's wife, who testified at the June 6, 1997 hearing regarding Plaintiff's limitations, stated that Plaintiff "[could not] do anything," was "hardly able to walk sometimes," was unable to "write or hold anything with his hand and fingers," and had "severe depression."  (A.R. 49.)  Thus, the limitations to which Plaintiff's wife testified <u>could</u> have a significant impact upon Plaintiff's ability to engage in work-related activities,

and the ALJ's summary dismissal of her testimony on such grounds constitutes error.

Accordingly, on remand, the ALJ must provide reasons, if they exist, for rejecting the testimony of Plaintiff and Plaintiff's wife in accordance with the governing legal standards.

**C.    The ALJ Improperly Dismissed Plaintiff's Claimed Mental Impairment As Non-Severe.**

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" Smolen, 80 F.3d at 1290 (citing Social Security Ruling 85-28; Yuckert v. Bowen, 841 F.2d 303 (9th Cir. 1988)); 20 C.F.R. § 416.921 ("[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); see also Bustamante v. Massanari, 262 F.3d 949, 955-56 (9th Cir. 2001)(ALJ's finding that claimant's mental impairment was not severe was not supported by substantial evidence because every mental health professional who examined claimant found significant mental problems).  The "severity" requirement is merely "a de minimis screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(citing Smolen, 80 F.3d at 1290).  "[A] claim may be denied at step two only if . . .  a finding [that the relevant impairments are not medically severe] is clearly established by medical evidence." Social Security Ruling 85-28 (emphasis added).

In finding that Plaintiff's claimed depression was not "severe," the ALJ stated:

> [Plaintiff's] wife testified that [Plaintiff] was depressed subsequent to an on-the job injury in 1986 but there is no evidence of longitudinal psychotherapy or medication. There is no evidence that [Plaintiff's] depression had more than a minimal effect upon his ability to engage in work-related activities. His situational depression is considered non-severe.

(A.R. 16.)

Plaintiff contends that the ALJ erred in finding that his claimed mental impairment was not "severe." (Joint Stip. at 10.) In addition to Plaintiff's testimony at the June 6, 1997 hearing, Plaintiff's wife testified as to Plaintiff's depression at that hearing, as well. As noted above, the ALJ failed to properly reject such testimony. To the extent that the ALJ credits any testimony that pertains to Plaintiff's mental limitations on remand, such testimony should be reconsidered in determining whether Plaintiff's claimed mental limitation was "severe."[9]

---

[9]   The Court notes that Plaintiff testified at the June 6, 1997 hearing that he used methamphetamine intravenously, smoked marijuana daily, and drank "a six-pack to two generally every day to two days" for pain relief. (A.R. 36-37, 41.) Plaintiff's wife testified after Plaintiff at the same hearing that she did not know of Plaintiff's methamphetamine use, and that Plaintiff drank "maybe one beer a month or less." (A.R. 49.) ALJ Blair noted Plaintiff's substance use, and the lack of disclosure to any health care provider, as grounds for discrediting Plaintiff's claimed depression in her 1998 decision. (A.R. 215.) However, as noted above, this decision was vacated, and the ALJ made no mention of Plaintiff's substance abuse in his 2002 decision.

In addition, the ALJ mischaracterized the record regarding Plaintiff's lack of treatment for his depression.  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion).  In 1987, Plaintiff reported being depressed and anxious to his chiropractor, Mr. Dillon, who referred Plaintiff to a psychiatrist, Dr. Buche.  (A.R. 142, 144.)  In a letter dated January 4, 1988, Dr. Buche diagnosed Plaintiff with a dysthmic disorder, and prescribed anti-depressant medication to treat Plaintiff's depression, as well as psychotherapy.  (A.R. 162.)  Although Dr. Buche stated that "I do plan to continue treating him on a periodic basis for the present time," there are no further records from Dr. Buche.  On remand, the ALJ should seek further records from Dr. Buche, to the extent that they exist, regarding his treatment of Plaintiff.  20 C.F.R. §§ 404.1512(e), 416.912(e)(duty to re-contact treating physician); Brown, 713 F.2d at 442-43; Thomas, 278 F.3d at 956-57, 959.

Moreover, although the record does not show that Plaintiff sought treatment for his depression after having seen Dr. Buche, this is not a

_____

On remand, the impact of Plaintiff's substance abuse on Plaintiff's claimed mental impairment must be addressed in accordance with the applicable regulations.  In cases where an impairment may have resulted from substance abuse, a two-step analysis is required.  First, the ALJ must evaluate which of the claimant's physical and mental limitations would remain if the claimant refrained from drug and alcohol use.  Second, the ALJ must determine whether the claimant's remaining limitations would be disabling.  20 C.F.R. § 416.935(b).  However, it is not proper to simply conclude that substance abuse is a contributing factor to the  impairment without distinguishing between the substance abuse contributing to the disability and the disability remaining if the Plaintiff stopped using drugs or alcohol.  Bustamante, 262 F.3d at 955 (ALJ improperly concluded that claimant's mental problems were the consequence of his alcohol abuse without attempting to determine the impact of his alcoholism on his other mental impairments).

reason, by itself, to discount Plaintiff's claimed depression.  *See* Gamble v. Chater, 68 F.3d 319, 320-22 (9th Cir. 1995)(failure to obtain treatment, even if the alleged condition is remediable, is not a sufficient reason to deny benefits where the claimant suffers from financial hardships)(quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1985)("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him."); Social Security Ruling 82-59 (a person who otherwise meets the disability criteria may not be denied benefits for failing to obtain treatment that he cannot afford).  *See also* Smolen, 80 F.3d at 1284 (claimant's failure to obtain medication because she could not afford it provided a valid reason for her failure to do so).

Accordingly, the ALJ's finding regarding Plaintiff's claimed depression constitutes error.

**D.   Further Testimony From A Vocational Expert May Be Necessary On Remand.**

Because the findings regarding Plaintiff's physical and mental limitations must be reevaluated on remand, Plaintiff's ultimate residual functional capacity assessment may change.   An ALJ must seek the testimony of a vocational expert if the claimant has non-exertional limitations, such as a mental impairment.  *See* Reddick, 157 F.3d at 729 (because the claimant had non-exertional limitations, it was error not to seek the testimony of a vocational expert).   If the vocational expert's testimony is not based on a claimant's complete set of

limitations, then it has no evidentiary value.  *See* <u>Embrey v. Bowen</u>, 849 F.2d 418, 422-24 (9th Cir. 1987)(in posing a hypothetical to a vocational expert, the ALJ must fully and accurately reflect all of the claimant's limitations).  Therefore, the Court does not reach the issues raised by Plaintiff regarding the propriety of the vocational expert's testimony, as the finding regarding Plaintiff's residual functional capacity must be reassessed and additional testimony from a vocational expert likely will be required.

**E.    <u>Remand Is Required</u>.**

Here, remand is appropriate to allow the ALJ the opportunity to correct the above errors.  *See* <u>McAllister</u>, 888 F.2d at 603 (remand appropriate to remedy defects in the record).

CONCLUSION

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

///

///

///

///

///

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2006

                                    /s/
                         MARGARET A. NAGLE
                 UNITED STATES MAGISTRATE JUDGE